```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE SOUTHERN DISTRICT OF TEXAS

 3                            HOUSTON DIVISION

 4     USA                          §    CASE NO. 4:22-cr-00560
                                    §    HOUSTON, TX
 5     VERSUS                       §    FRIDAY,
                                    §    JANUARY 6, 2023
 6     MARTINEZ, et al.             §    9:40 AM TO 10:39 AM

 7                              MOTION HEARING

 8            BEFORE THE HONORABLE GEORGE C. HANKS, JR.
                    UNITED STATES MAGISTRATE JUDGE
 9
                               APPEARANCES:
10

11        FOR THE PARTIES:              SEE NEXT PAGE

12        COURT REPORTER:               ANTONIO B. BANDA

13        COURT CLERK:                  BYRON THOMAS

14

15

16

17

18

19

20               TRANSCRIPTION SERVICE BY:

21              Veritext Legal Solutions
              330 Old Country Road, Suite 300
22                  Mineola, NY 11501
            Tel: 800-727-6396 ▼ www.veritext.com
23
        Proceedings recorded by electronic sound recording; transcript
24               produced by transcription service.

25
```

```
1                                    APPEARANCES:

2

3    FOR THE PLAINTIFF:          OFFICE OF THE U.S. ATTORNEY
                                 Erin Epley
4                                Jackie Lem
                                 Christina Taylor
5                                Brittany McClure
                                 1000 Louisiana
6                                Suite 2300
                                 Houston, TX 77002
7                                713.567.9585

8

9    FOR C. YZAGUIRRE:           MORENO GRACIA & BERG
                                 Tom Berg
                                 4306 Yoakum Blvd.
10                               Suite 240
                                 Houston, TX 77006
11                               713.502.9596

12   FOR J. RAMIREZ AVILA:       GERGER HENNESSY & MARTIN
                                 Ashley Kaper
13                               700 Louisiana St
                                 Suite 2300
14                               Houston, TX 77002
                                 713.224.4400
15
     FOR J. TAPIA FERNANDEZ:     LAW OFFICE OF CHRIS SULLY
16                               Chris Sully
                                 5804 N 23rd St.
17                               McAllen, TX 78504
                                 956.413.7271
18
     FOR M. MEDINA:              LAW OFFICE OF DANIEL SANCHEZ
19                               Dan Sanchez
                                 501 E Tyler
20                               Harlingen, TX 78550
                                 956.425.5297
21
     FOR S. GUERRA MEDINA:       LAW OFFICE OF EDMUND CYGANIEWCZ
22                               Edmund Cyganiewicz
                                 1000 E Madison St.
23                               Brownsville, TX 78520
                                 956.541.5995
24

25
```

```
 1    FOR C. MARTINEZ:              LAW OFFICE OF RENE E. DE COSS
                                    Rene De Coss
 2                                  914 E Van Buren
                                    Brownsville, TX 78520
 3                                  956.550.8330

 4                                  BALLESTEROS GONZALEZ LAW FIRM
                                    Alejandro Ballesteros
 5                                  3900 N 10th St.
                                    Suite 980
 6                                  McAllen, TX 78501
                                    956.800.4418
 7
      FOR M. MIRANDA:               MARK DIAZ & ASSOCIATES
 8                                  Thomas Overhouse
                                    719 59th St.
 9                                  Glaveston, TX 77551
                                    409.515.6170
10
                                    LAW OFFICE OF CHARLES BANKER
11                                  Charles Banker
                                    405 Main St.
12                                  Suite 910
                                    Houston, TX 77002
13                                  713.227.4100

14
                       (APPEARING TELEPHONICALLY)
15

16

17

18

19

20

21

22

23

24

25
```

```
1              HOUSTON, TEXAS; FRIDAY, JANUARY 6, 2023; 9:40 AM

2              THE COURT:  Good morning everyone.  The next case on

3    the Court's docket is Cause No. 422-cr-560, the United States

4    of American versus Mr. Martinez, et al.  Can counsel on the

5    line just introduce themselves to the courtroom and the parties

6    they represent, starting with the Government.

7              MS. LEM:  Good morning, Your Honor, Jackie Lem for

8    the United States.  Nice to meet you.  I am joined by Erin

9    Epley, AUSA from the Southern District.  We also have on the

10   line, here with me in my office, is and Mike Lepage; also

11   Brittany McClure and Christina Taylor.

12        THE COURT:  Great.  Welcome.  And on behalf of the counsel

13   representing each of the Defendants, if you can all introduce

14   yourselves to the Court, state the Defendants that you

15   represent.

16        MR. QUINTANILLA:  Good morning, Your Honor.  My name is C.

17   J. Quintanilla, and I represent Mr. Carlos Favian Martinez.

18   We're here at the Joe Corley.  I hope everyone can hear us.

19             THE COURT:  Oh, yes we can.  We can.

20        MR. QUINTANILLA:  Good.  And my co-counsel, I'll let him

21   introduce himself, Mr. Alex Ballesteros.  He's also here.

22        MR. BALLESTEROS:  Good morning, Your Honor.  Good morning,

23   everyone.  Alejandro Ballesteros on behalf of Mr. Carlos

24   Martinez.

25             THE COURT:  Welcome.
```

1      MR. GARZA:  Good morning, Your Honor, Noe Garza, counsel

2    for Pedro Calvillo Hernandez, Your Honor.

3      MR. SANCHEZ:  Good morning, Your Honor, Dan Sanchez,

4    counsel for Marco Medina, present and ready.

5      MR. BANKER:  Charles Banker on behalf of Mireya Miranda.

6      MR. DE COS:  Your Honor, good morning, Rene De Cos on

7    behalf of Diego Ceballos-Soto.

8      MR. BERG:  Tom Berg for Carlos Yzagirre.

9      MR. CYGANIWICZ:  Good morning, Your Honor, I'm Edmund

10   Cyganiwicz for Sandra Medina.

11     MS. KAPER:  Ashley Kaper for Mr. Ramirez Avila.  Good

12   morning.

13     THE COURT:  Good morning.  Well, welcome everyone.  I

14   wanted to have a status conference regarding the motion to

15   continue trial, because it sounds like you guys are having a

16   lot of difficulty getting things coordinated and there's some

17   issue about how this case should be designated, and whether or

18   not it is going to be designated as complex.  Let me let the

19   Government start with your understanding of what the issues are

20   between the parties that need to be resolved, starting with the

21   joint motion to continue.  And then I'd like to talk about the

22   Motion or Protective Order.  And also, whether or not this case

23   is going to be designated as complex -- in any order you like;

24   those are just the three issues I need to talk to you about.

25     MS. LEM:  Yes, I can take the motion to continue first.

1    We ae asking that the Court make a finding that this case is

2    complex, and that a continuance is in the interest of justice.

3    This case involves 12 defendants, 11 counts, four conspiracy

4    charges.  All of those conspiracy charges involve quite a long

5    time period.  And then also, seven substance accounts as well.

6         The discovery in this case is voluminous.  As we've said

7    in our pleading, our Relativity database contains over two

8    million records.  As soon as a protective order is entered, we

9    are prepared to produce 1.6 million records, consisting of cell

10   phone data.  We are also ready to produce various chat threads.

11   We have, ready to go, 1,800 records, with over 10,000 pages of

12   transcripts and translations of those chats.  In addition, we

13   are getting ready to produce 350,000 additional records from

14   emails, iCloud and phone.

15        This case also involves a lot of Spanish-language

16   material.  A lot of these chats that we are ready to produce

17   are in Spanish.  Many of them have been transcribed and

18   translated.  That is a laborious process that is still ongoing.

19   As we receive additional transcripts and translations, we will

20   be producing those.  But the language adds yet another level of

21   complexity.

22        THE COURT:  And let me hear from the Defendants that

23   oppose the Motion.

24        MR. SULLY:  Your Honor, this is (indiscernible) introduce

25   myself, this is Christopher Sully for Jose de Jesus Tapia, Your

1  Honor.  Nice to meet you.

2       THE COURT:  Nice to meet you,

3       MR. SULLY:  Your Honor, if I may start at, I believe I'm

4  one of two Defendants, or defense counsel, that are opposing

5  the motion.

6       Basically, our concern, Your Honor, is my client has been

7  in custody at Joe Corely.  He's not on the screen today, but he

8  is in custody.  And we just want to make sure that his speedy

9  trial rights are preserved, that the trial isn't delayed more

10  than necessary.

11       At this point, we haven't received any of the discovery

12  yet; partly because of the protective order issue.  But our

13  concern is just that we would like to be able to actually

14  review the evidence, see what actually pertains to my client,

15  before agreeing to a continuance of any length.  Because, in

16  particular, my client has -- his charges are, basically, based

17  on three wire transfers for the purchase of a home back in

18  2019.  So, while there may be a lot of documents and records in

19  evidence that we've obtained in this case, I would like to see

20  the evidence and see how much of it actually pertains to my

21  client, because we may be able to prepare for trial sooner than

22  perhaps what's been suggested, as to -- based on just the

23  amount of the record.

24       So, basically, even though there may be a lot of records,

25  we don't know how many of those actually pertain to my client,

1   and whether lengthy continuance is required.

2       And as far as his particular charges, I will submit that

3   they're not unusually complex; basically, a purchase of a

4   residence or -- you know, and three wire transfers is not out

5   of the norm for this type of case, Your Honor.  That was,

6   basically, the reason why we were opposing the motion to

7   continue.

8       THE COURT:  Any other Defendant that is opposing the

9   Motion, if you could speak now and just let me know what your

10  opposition is.

11      MR. BALLESTEROS:  Yes, Your Honor.  On behalf of Mr.

12  Martinez, similar to Mr. Tapia, Mr. Martinez is in custody.

13  And since, even though the Government quantify the amount of

14  discovery that they intend to produce, at this juncture, you

15  know, we want to make sure that our clients speedy trial rights

16  aren't weighed against that, based on all this information that

17  the Government indicates that they're going to provide; how is

18  it relevant to our client.  I think once we get past protective

19  order and start reviewing discovery, we can see that though Mr.

20  Martinez is involved in all these other counts, at this point,

21  none of the counts seem overly complex; (indiscernible) Sherman

22  Act violations.  There's the money laundering violations, and

23  they stem from some transaction.

24      So, before the case is actually designated as complex,

25  we'd like to know what information Government actually has

1    against our client, and it doesn't get pushed out all the way

2    to July, I believe, is the suggested date that the Government

3    proposed.

4         THE COURT:  Anyone else that wants to be heard?  Ms. Lem,

5    I'll give you opportunity to respond, and then the Court will

6    issue a ruling.

7         MS. LEM:  Thank you, Your Honor.  As to Mr. Sully's

8    pointing out that his client is only involved in three wire

9    transfers, Your Honor, I think as we said in the pleading,

10   these counts are all incredibly intertwined.  This was a scheme

11   with many players, many layers.  They all -- the conduct in

12   this case is very interrelated.  The antitrust counts relate to

13   the extortion counts, relate to the money laundering counts.

14   Vice versa; the money laundering counts relate to the

15   extortion, relates to the Sherman Act account.  We have charged

16   this case as one case.  The 12 Defendants ae in a single

17   indictment.  No severance has been granted.

18        And I do agree that we could enter the protective order,

19   and once the protective order is entered, we are prepared to

20   hand over discovery, so that that process could get started,

21   and Defendants and their counsel can start understanding what

22   this case is about.

23        THE COURT:  Here's the Court's ruling:  I am granting the

24   -- well, I am finding that this is a complex case.  And as a

25   complex case, a limited continuance is necessary.  The only

```
 1    issue for me is the length of that continuance.

 2         So, what we're going to do is, I'm finding that the case

 3    is a complex case and a continuance is necessary.  The next

 4    step I want to do is take care of the protective order; get the

 5    documents to all the parties that need to review the documents,

 6    and then, in two weeks, have another status conference and talk

 7    about specific dates for the trial, given the documents that

 8    have been turned over, and everybody's initial review of those

 9    documents.

10         So, what we're going to do, again, is I'm designating this

11    as a complex case.  I am granting a continuance of the trial.

12    But the length of that continuance is going to be determined

13    after the parties have exchanged -- the Government has turned

14    over the documents pursuant to the protective order.  And then,

15    what I'm going to do is, in two weeks, set a hearing -- well,

16    first of all, let me ask Ms. Lem, once we resolve the

17    (indiscernible) order today, how soon can you get the documents

18    to the Defendant?

19         MS. LEM:  As I said, we have 1.6 million records ready to

20    go today.  Early next week the chats that I mentioned, the

21    1,800 records of chats with the associated transcripts and

22    translations, those will be ready early next week.  An

23    additional 350,000 records, consisting of records from emails

24    and iClouds and phones, that will ready soon as well.

25         We also have additional recordings, and of course, law
```

1    enforcement reports, (indiscernible), that kind of thing, that

2    we intend to produce as well.  For those, Your Honor, those are

3    highly sensitive; they reveal people who have come forward with

4    information.  This is our concern with regard to the protective

5    order.  Assuming the Judge enters the protective order as we

6    have proposed, we would like to produce that subject to being

7    able to let any of the cooperating witnesses know that this is

8    coming and that this is happening.  So, but that's sort of the

9    rough timeline, Your Honor.  We anticipate rolling production.

10         THE COURT:  So, basically, in two weeks, assuming that we

11    get a protective order that's in place that agreeable to

12    everyone, pretty much, within two weeks, the bulk of the

13    documents are going to be produced.

14         MS. LEM:  There will be a significant volume that we can

15    produce, yes, Your Honor.  It won't be everything, but it will

16    be a lot.

17         THE COURT:  Great.  So, what I want to do then, is set a

18    hearing, a status conference on January 20, which is in two

19    weeks from today, at 11:00 AM.  So, at that time, I need

20    everybody back here.  I need us then to talk about

21    (indiscernible) the documents and what are in the documents.

22    And then see if we can get a realistic estimate of how long we

23    need to put the trial off in order to let everybody be

24    prepared, but not be any longer than necessary, to make sure

25    that the Defendants are not in custody longer than they need

1    be.

2         So, we'll set a hearing for, again, 11:00 AM, January 20,

3    here.  We'll do it by video again.  And by that time, a

4    significant number of the documents, assuming that we'll get

5    the protective order resolved, and we will, get that resolved,

6    a significant number of the documents will be produced and Mr.

7    Ballesteros and Mr. Sully, you have a better idea of how long

8    (indiscernible) needs to be to go to trial, from your side.

9         MR. BALLESTEROS:  Judge, if I may, Judge.  I think, you

10   know, in our communications with the Government, we've

11   requested either a bill of particulars or hot sheets, or

12   something so that we can, or so that we could have been better

13   prepared to present to the Court, other than what's alleged in

14   the indictment and been repeated by the Government; to get a

15   grasp of sort of, you know, all this quantitative, all these

16   1.6 million records and chats and recordings.  And I don't know

17   if the Court is inclined to order the Government to provide

18   those to defense counsel so that we can better prepare for the

19   hearing on January 20.

20        THE COURT:  Well, it sounds like, by that date, Ms. Lem,

21   you're going to be producing a lot of documents, unless --

22   assuming that we get our protective order in place -- which I'm

23   telling you, we will get this resolved this morning -- you

24   should, Mr. Ballesteros and Mr. Sully, have documents setting

25   forth your clients' involvement and sort of getting us a handle

1    on the scope of what's necessary to get done before trial.  And

2    if you find, if you don't have that, you can say, "Look Judge,

3    there's nothing that … you know, with respect to our clients,

4    there really isn't any need for a continuance."  And then we'll

5    talk about the fact that the other defendants might need that

6    time; your clients may not need that time and, you know, are

7    you then going to be asking to somehow have a separate trial or

8    whatever?  And we need to talk about that standard.

9        But right now, the key is, it is a complex case.  Pursuant

10   to protective order, we'll discuss a little bit, there'll be

11   documents produced, so the next week to two weeks, on January

12   20, we'll all get back together, when we have a better idea of

13   how long (indiscernible) this is necessary.  And I'm not going

14   to make the continuance any longer than absolutely necessary,

15   to make sure that the parties are prepared for trial.

16       MS. KAPER:  Judge, is that attorneys only?

17       THE COURT:  I'm sorry?

18       MS. KAPER:  Is that attorneys only for the January 20

19   hearing?

20       THE COURT:  It's attorneys only, unless you would like to

21   bring your clients, but I don't see a need for it.  It would be

22   attorneys only.

23       Sorry, we have a echo in the courtroom, so I couldn't hear

24   you, Ms. Kaper.  I apologize.

25       So, let's get to the heart of the matter, which is the

```
 1    protective order.  Let's talk about what the objections are to
 2    the protective order.  I've read the Motion.  I understand the
 3    protective order.  Let me talk to the Defendants about what
 4    modifications are needed for objections you have to the
 5    protective order as drafted by the Government.
 6            MR. SULLY:  (indiscernible), I'm sorry.
 7            THE COURT:  Anyone can speak.
 8            MR. BALLESTEROS:  Go ahead, Mr. Sully.
 9            MR. SULLY:  Thank you, Mr. Ballesteros.  Your Honor, our
10    only concern or objection we had was regarding the, producing
11    for our clients to have copies of discovery.  Again, my client
12    is in custody, and it's going to be very difficult to
13    (indiscernible) review the evidence with him if I can only show
14    it to him whenever I see him in person there at Joe Corley, and
15    he's not able to review any of the information in between our
16    visits.
17            As far as what we were thinking was perhaps putting the
18    discovery on a iPad or laptop that he could review at
19    designated times under the supervision of the guards there at
20    Joe Corley, and so that way we could have a more meaningful
21    discussion when we meet I meet with him, as far as the
22    evidence.
23            As far as the Government's concern, it seems that they are
24    in agreement for us to show all of the evidence to our clients.
25    Their concern regarding the keeping of copies -- I'm not going
```

1   to speak to Defendants who may be on bond -- but as far as my

2   clients who are detained, you know, every move is watched, and

3   especially because we propose, where he's given a device he has

4   limited access to, that doesn't have internet capability; he

5   can't email the information to anybody else, he can't send the

6   information out of the detention center.  And I think that

7   really addresses the Government's concern as far as there's,

8   you know, not a risk of further dissemination of that

9   information.  And, of course, he would be admonished under the

10  protective order, as the Government proposes that he's not

11  allowed to share that information with anyone else.

12      So, we're just asking for that provision to be in place;

13  basically, for the Court not to order the provision that the

14  Government's asking for regarding the Defendant not retaining

15  copies, or at least in the case of a defendant such as mine,

16  who is in custody.

17      I believe Mr. Ballesteros was making the same objections,

18  and his client is also in custody.  So, I'm not sure if he has

19  anything to add on that as well.

20      MR. BALLESTEROS:  If I may, Judge.  Assuming the Court

21  finds the cause to allow the protective order, based on the

22  examples provided of the potential acts of violence in the

23  Government's motion; even though we were objecting on it being

24  broad and not specific to the case, even though it's kind of

25  alleged in the overt act of the indictment.  I the Government's

```
1    response, they just indicated generally how the individuals who
2    were part of, or were not part of the scheme, that there were
3    some acts of violence committed towards them on the Mexican
4    side.  But it doesn't tie it into, I believe, any of our
5    clients, other than the (indiscernible).
6         But assuming that the Court finds good cause to allow the
7    protective order, we would ask for less restrictive means.  I
8    think they've been highlighted by Mr. Sully.  We've discussed
9    them.  Mr. Martinez is in custody.  We can provide a iPad or
10   computer at our expense, as long as he's given access to it,
11   that doesn't have internet access, that won't allow for copy or
12   printing, and won't allow for him to, I guess, to make those
13   items.  That way, he can help us review and analyze everything
14   that we need in order to prepare an adequate defense and
15   protect the due process rights.  Plus, the Court's
16   admonishments are (indiscernible) admonishment.  We've been
17   discussing this, pretty much since day one, with Mr. Martinez.
18   And he's aware of it.  But we will further admonishment,
19   seeking copies of the protective order along with the material.
20   There might be a way on an iPad or computer where we can make
21   sure that, you know, just similar, like we logged into Zoom
22   today, where it gives us the general warning.  We can provide
23   that general warning on the iPad as well, or computer, in order
24   to safeguard them and keep the scope of the protective order.
25        MR. QUINTANILLA:  Your Honor, if I may.
```

1      THE COURT:  Oh, yes.

2      MR. QUINTANILLA:  I'm here with Mr. Martinez at Joe

3  Corley.  The Government offered an alternative in their reply

4  motion.  And I think that would appease anyone's concerns, Your

5  Honor.  So, I'm asking that the Court to consider that

6  alternative.

7      THE COURT:  That was actually my next question for Ms.

8  Lem.  I mean, what do you think about the proposal that the

9  Defendants have offered?  And aren't these -- well, first, what

10  do you think about the proposals they offered in order to

11  maintain control of the documents first?  And then second, what

12  about the proposal that you made in the letters going back and

13  forth, as a compromise?

14      MS. LEM:  On the iPad, laptop, there's no internet

15  connectivity.  I just don't know how the facility will monitor

16  it, if we could hear more from the facility personnel that this

17  will actually work; that they have resources to monitor it; how

18  it will be monitored; who will be there.  I'd be happy to hear

19  more details, but there weren't a lot of those kinds of details

20  in the pleading.

21      As far as the alternative that we offered, this was -- I

22  think our position, Your Honor, is we continue to strenuously

23  object to the Defendants retaining copies of the discovery.  We

24  think given the violence that is specific, alleged in the

25  indictment, we have grave concerns about witness safety,

```
1     intimidation, influence.  But if Your Honor is inclined to rule
2     against us, our suggestion was to --
3             THE COURT:  (indiscernible) hear me?
4             MS. LEM:  Yes.  I was saying, Your Honor, our position --
5             THE COURT:  I can't hear you.  Can everybody hear me?
6             ALL:  Yes.
7             THE COURT:  Does somebody not have their microphones off?
8             MS. LEM:  Can you guys hear me now?
9             ALL:  Yes.
10            MS. LEM:  Okay.  Maybe I'm just talking too loud.  Maybe
11     I'll talk a little softer.
12            I was saying, we strenuously object to the Defendants
13     retaining copies of the discovery, given the specific
14     allegations of violence in the indictment, given our grave
15     concerns that we have about witness safety, intimidation,
16     influence.  We do not agree to Defendants retaining the
17     discovery.  But if Your Honor is inclined to rule against us,
18     then what we propose in our pleading, was to have the
19     protective order contain additional language regarding the
20     risks and limitations of Defendants retaining the discovery.
21            MS. KAPER:  Your Honor, if I could be heard before you
22     issue a ruling, because my client is in a bit of different
23     posture than the rest.  As stated before, I represent Mr.
24     Ramirez Avila, who is out on bond.  And our position is, is
25     that the denying the Defendants access, full access, to the
```

1    material, the evidence, is prejudicial against them, and that

2    there are sufficient safeguards that the Court can put in

3    place, that can be elements of the protective order, so that

4    the information is not disseminated.

5        But to be honest, Your Honor, whether a client reads the

6    information that their attorney, or retains a copy reading the

7    same information, isn't going to -- just, I guess, assuage the

8    prosecution of their concerns regarding the safety of the

9    witnesses.  The (indiscernible) ensure the safety of the

10   witnesses is by admonishing Defendants, which can be done,

11   whether they (indiscernible) material with their counsel or

12   without.

13       So, my position is, and I believe it's the same as Mr.

14   Ballesteros, Mr. Sully, is that Defendants should be entitled

15   to full access to the materials, whether they're in custody or

16   not.  And in my case, my client has limited access to

17   technology (indiscernible) a significant burden for him to have

18   to travel to Houston to review the millions of pages of

19   discovery that the Government has noted will be provided to us.

20   So, for all these reasons, there are many instances in which

21   there are acts of violence alleged in an indictment, and

22   Defendants are still entitled to a obtain copies of the

23   material.  There are obviously severe consequences for

24   communicating with any of the witnesses, and threatening any of

25   witnesses.  So, again, safeguards can be put in place while

1    still ensuring the Defendants' due process and other

2    protections are in place as well.

3         THE COURT:  Well, I agree that the Defendants need full

4    access to the documents, and that's sort of my touchstone.  But

5    I want to make sure that they do have full access to the

6    documents.  What I'm concerned about, is those documents

7    getting outside of the hands of the Defendants and into the

8    hands of others.  And I know that there's an argument that,

9    well, if they know the information, what difference does it

10   make whether they have actual paper copies, or know the

11   information.  Unfortunately, in my experience, it does make a

12   difference, because those documents get into the hands of other

13   people, and they're used to convince other people to commit, in

14   some cases, acts of violence against potential witnesses; I've

15   had it happen before.

16        It's different -- although you would think that there's no

17   difference in the parties' just knowing the information as

18   opposed to having a paper copy; it turns out that there is a

19   difference.  So, I am concerned, not that Defendants get the

20   information that they're entitled to, but my concern is that

21   information, a paper copy, getting outside the control of the

22   Defendants.  That's my concern.

23        I think the Defendants should be allowed to review the

24   documents and have unfettered access to those documents and

25   their counsel.  However, I don't believe that the Defendants

1    should be allowed to take physical possession of those

2    documents outside the presence of counsel, in this case, given

3    the concerns raised by the Government.

4         The challenge here is how to get that accomplished and

5    still allow the Defendants to be able to meaningfully interact

6    with their counsel and prepare a defense in this case.  And you

7    guys are like ships passing in the night on that issue, because

8    the Government is saying, you know, "We don't want -- we want

9    to severely control the information."  The Defendants are

10   saying, "We need some freedom in our access to that information

11   so that we can work with our clients and work with our lawyers

12   to prepare a defense."

13        What I want you to do -- and this is the best we can do

14   right this second --is I want you guys to talk about -- Ms. Lem

15   and Mr. Sully and Ms. Kaper and Mr. Ballesteros, and anyone

16   else that's concerned about this -- a way to allow the

17   Defendants access to the materials, but not keep that material

18   in their custody for any prolonged period of time.  Maybe that

19   can be done with an iPad.  I don't know, but I think you guys

20   need to talk about how that's done.  Because they definitely

21   need to be able to see it, and they need to be able to go over

22   those materials, unfettered, with counsel.

23        And I understand, Ms. Kaper, your concern that your client

24   doesn't want to have to come in and review these documents.

25   Unfortunately, I'm not going to allow those documents outside

1    the control of counsel.  So, we need to figure out a way to

2    keep control of those documents and make sure that they're not

3    distributed to anyone outside of counsel for a prolonged period

4    of time.  But at the same time, make sure that Defendants are

5    allowed to be with counsel and have time to go over those

6    documents with counsel before they meet with them.

7         I like the idea of using an iPad.  I don't know if that's

8    possible (indiscernible) on their own time, so that's when they

9    meet with counsel.  Then they can go over those documents.  I'm

10   not quite sure how else to do it.  Ms. Lem, Mr. Sully, do you

11   have any suggestions?  What's off the table, respectfully, is

12   I'm not going to allow the Defendants to have access to

13   documents unsupervised for prolonged periods of time.  They're

14   not going to get them.  They can get them, they can review

15   them; they're going to have to give them back to counsel when

16   they're done.

17        MR. BALLESTEROS:  Judge, so I think there's a halfway

18   point there, if I may kind of just talk about it openly.  In

19   regards to having an iPad or a database where it could be

20   uploaded, like a hard drive, where it could be -- that it's

21   only agreed access, that they can't screenshot, make copies of

22   it.  Our clients -- I believe Mr. Tapia and Mr. Martinez, and I

23   believe Mr. Calvillo is also in custody -- I believe those

24   three defendants, just by the nature of them being in custody,

25   their calls are all monitored, their movements are sort of

1    restricted.  Mr. Martinez currently has a separation order;

2    he's been isolated.  He's been in the hole since he's been

3    detained, since he's been in custody.  I've tried to get some

4    information from the Government, although it seems like I'm not

5    getting anywhere with them.  But he's completely isolated from

6    general population and from everyone else.

7        And so, I believe the fact that they're in custody, and

8    that way they can have time to review it; if we can put

9    safeguards or procedures so that they don't make copies of the

10   items, they don't talk about it with anyone.  But if it's 1.6

11   million records, 1,800 chats, over 10,000 transcripts, over

12   350,000 emails and iCloud information, in order to protect

13   their due process rights and their assistance in preparing for

14   trial, we're going to need to -- there's not going to be enough

15   hours in the day, I guess, Judge, to try to get all that

16   information reviewed.  Some of it might be, you know, chats

17   about -- I mean, it's a Relativity database is what Ms. Lem

18   indicated.  So, all these documents should be relevant somehow.

19   But we're going to need help from our clients to decipher them.

20   And I'm not exactly -- I mean, other than what we've suggested,

21   which was the Government's alternative, how else we could do

22   that.

23       MR. QUINTANILLA:  Judge, if I may.  I'm C.J. Quintanilla.

24   I'm with Mr. Martinez, along with Mr. Ballesteros and …  The

25   Government's given us an alternative, and all we need to do is,

1    in my opinion, is add on there that Defendant will return those

2    documents upon their completion of review.  That's my

3    suggestion.  But that alternative of theirs, that the

4    Government put in, I think that's perfect.

5         THE COURT:  The problem is, on the one hand, the Defendant

6    needs to be able to review those (indiscernible) documents, to

7    actually prepare for trial, no question about that.  And they

8    need to be able to review those documents with counsel as well.

9    My concern, and I think the essence of the Government's motion,

10   is that unrestricted access to those documents should not be

11   allowed that would lead to those documents being disseminated

12   outside of counsel, and that's the concern.

13        Can you guys hold on for just one second?  I just want to

14   take a look at something and I'll be right back, okay.

15        MAN 1:  Yes, Your Honor.

16        (PAUSE)

17        THE COURT:  Hello counsel.  I'm back on the line.  Thank

18   you for your patience.  Here, I looked at the protective order

19   again, and here's my concern.  There's no question that a

20   protective is needed.  What is -- at the same time, the

21   protective order may be too restrictive in terms of allowing

22   Defendants the opportunity to review the documents adequately

23   before meeting with counsel, and also while meeting with

24   counsel.  So, what I want you both to do, both sides to do, is

25   come up with a middle ground, because I'm not writing the

```
1   protective order the way it's written.  It's too restrictive.

2       But at the same time, I'm not going to allow unrestricted

3   access for the Defendants, of those documents.  So, I think you

4   need to sit down and talk about how you -- to compromise, to

5   figure out how you're going to allow the Defendants and counsel

6   adequate access to those documents in this, and be able to

7   prepare a meaningful defense in this case.

8       So, the protective order, as its written, is too

9   restrictive.  I agree with the Defendants on that.  It needs to

10  have modifications, but I'm not sure what those are.  So, I

11  think that you guys need to figure that out.  But I'm not going

12  to grant the protective order as its written.

13      MS. KAPER:  Your Honor, the modifications suggest -- this

14  is paragraph seven, that were referred to in document 153 -- is

15  the Court amenable to that modification, which is the

16  admonishment the Defendants would receive if permitted to

17  obtain copies?

18      THE COURT:  My concern is the Defendants retaining copies

19  of the documents for any extended period of time without being

20  supervised.  That's my concern.  I mean -- and what I mean by

21  not being supervised with the opportunity to pass those

22  documents onto other people, even despite -- I know the

23  protective order says you can't -- I think that given the

24  concerns raised by the Motion, there needs to be additional

25  protections to prevent those documents from being disseminated
```

1   beyond the Defendant and their counsel.

2        The admonishment is good, it's a good start, but still,

3   the problem is, is that with this admonishment, it doesn't take

4   care of the fact that there are defendants that could take the

5   documents and disseminate them.  I mean, there's no

6   (indiscernible) other than their promise not to do that.

7        MS. LEM:  And, Your Honor --

8        THE COURT:  I'm saying, given the concerns that Ms. Lem

9   has raised, I'm not comfortable with that, with just the

10  admonishment.

11       MS. LEM:  And Your Honor, may I be heard?  As it is

12  written, paragraph seven, as it has been written by the

13  Government and proposed by the Government, in its original

14  form, Defendants may access and review the protected materials.

15  However, they shall not possess the originals or copies of

16  those materials, outside the courtroom or the presence of

17  defense counsel, (indiscernible) prior commission from this

18  Court.

19       By those terms, Your Honor, the counsel and their

20  Defendants, for example, you know, get on a Zoom call or a

21  Teams call, and screen share the information and discuss the --

22  they don't have to be physically present.  So, you know, to the

23  extent Ms. Kaper has concerns about she's in one place, her

24  client is in another place, that that creates friction because

25  they're not in the same place -- the don't have to be in the

1    same place.  The two, counsel and their defendants don't have

2    to be physically present to be able to review the materials

3    together.  It could be set up on a server somewhere, where he

4    can review it, you know, but not, you know, make screenshots or

5    copies of it, etc.

6         MS. KAPER:  (indiscernible) …

7         THE COURT:  So, I guess my point is, there's a lot of

8    room, as paragraph seven is written, to accommodate a

9    compromise like that.

10        THE COURT:  But here's the problem -- and (indiscernible)

11   Ms. Kaper's response to this -- it's my concern with this, the

12   way paragraph seven is written, there's no way for the

13   Defendants, on their own time, to be able to review the

14   documents and think about the arguments or positions, without

15   counsel being on the line.  So, every time Defendants have to

16   want to look at the documents, you've got to get counsel on the

17   line -- counsel's busy, counsel has other cases to resolve --

18   has to be on the line with counsel there for the entire hour or

19   two hours, however long it takes for them to review the

20   documents, and that's not really workable either.  I mean, Ms.

21   Kaper, I'm sure you probably have other arguments, but that's

22   my main concern, based on the arguments that you made.

23        MS. KAPER:  That's exactly right.

24        THE COURT:  You've got to allow the Defendants the ability

25   to review the documents on their own time and prepare to meet

1    with counsel.  And the way this is written, it doesn't provide

2    -- it doesn't allow them to do that.  And that's a big, and

3    that's a major concern of mine.

4        So, what I want you guys to do is figure out -- and I'll

5    give you (indiscernible), until next Friday to let me know, of

6    what a compromise that you come up with, resolve this issue,

7    understanding that my concern -- well, understanding two

8    points:  One, as it's written, the protective order, I'm not

9    going to sign it.  Second, the concern I have with the

10   protective order is that while it does do a pretty decent job

11   of making sure that the information is protected when

12   defendants are with counsel, it doesn't allow defendants to be

13   able to review the documents on their own without presence of

14   counsel, and still maintain the integrity of the documents,

15   that is, making sure the documents aren't disseminated.

16       I'm not comfortable with just allowing an admonishment.

17   Given the concerns raised by the Government's motion,

18   admonishment is insufficient (indiscernible).  What those other

19   protections are, I'm going to leave those up to you.  But you

20   need to get back to me with a compromise by next Friday, or I'm

21   just going to issue my own and you're just going to have to

22   live with it.

23       But I think that there is room for you guys to agree on

24   this.  I just don't know, with the technology and the

25   accommodations, what -- how it can be done.  But I need you

1    guys to get back to me by next Friday, with a solution or I'll

2    just have to issue a ruling based on my experience as best I

3    can.  But understand that the way it's written now, I'm not

4    going to sign it, because it doesn't adequately protect the

5    ability of the Defendants to meet with their counsel and

6    prepare the case for trial.

7         MR. BALLESTEROS:  Judge, this is Alejandro Ballesteros.

8    Judge, the individuals that are in custody, they are monitored,

9    they are -- their calls are reviewed, they can't make copies of

10   the documents if it's provided in a hard drive.  Would that

11   alleviate the Court's concerns, based on the individuals that

12   are in custody?  I'm just trying to --

13        THE COURT:  You need to talk to the (indiscernible) to

14   make sure that all of that -- how that's going to work.  And

15   Ms. Lem, you can talk to Joe Corely folks as well, with Mr.

16   Ballesteros, and see how that works.  That may be sufficient

17   although, I do know that cooperating witness statements have

18   been leaked out from BOP facilities before.  So, you guys sit

19   down and talk about how to best make that happen, make sure

20   that that information is not leaked out, to the best of your

21   ability.

22        And then, with respect to Ms. Kaper, your client, I think

23   there might be some way for you guys to talk about some sort of

24   central database that can be reviewed, that's not copiable,

25   that's, you know, limited access to who can access it, who can

 1    take screenshots (indiscernible).  But that's -- you guys need

 2    to work that out.  I'm not sure what the technology is, I'm not

 3    sure the concern.  But the bottom line, again, is the way it's

 4    drafted now, I'm not signing it, first thing.

 5         Second thing, the concern is we've got, need to make some

 6    accommodation with respect to allowing the Defendants the

 7    ability to review these documents in a way that, you know,

 8    minimizes the possibility of those documents being disseminated

 9    to third parties; but at the same time, allows those Defendants

10    to review those documents without counsel being present.

11    That's just -- and the way it's written now, it would prevent

12    Defendants from being able to review documents without counsel

13    present.  And that's unacceptable.  So, any --

14         MR. GARZA:  Judge, with regards to the -- this is on

15    behalf of Calvillo -- with regards to the ones that are in

16    custody, if it's a matter of supervision (indiscernible)

17         THE COURT:  It would seem to be, matter of supervision and

18    control of the documents.

19         MR. GARZA:  Could we designate a representative from like,

20    for example, my office, to supervise the client as he reviews

21    it?  Is that also an alternative?

22         THE COURT:  I think that you need to talk to Ms. Lem about

23    that and see if there's a compromise.  I don't think that's

24    appropriate for Ms. Kaper's clients, or any defendants that are

25    on supervised release.  But maybe for defendants that are in

```
 1   custody, that would be appropriate.  I think that's something
 2   you should talk to Ms. Lem about.
 3        MR. GARZA:  Yes.
 4        MS. LEM:  Understood.  Thank you, Judge.  We'll get back
 5   to you.
 6        THE COURT:  If you can get back to me by next Wednesday.
 7        MS. LEM:  Your Honor, we'll do that.  We will discuss
 8   further and we'll get back to you by next Friday on the
 9   protective order.  In the meantime, Your Honor, we will not be
10   making criminal discovery, given that there is no protective
11   order.  So, in terms of the January 20 date --
12        THE COURT:  We're still on for the 20th.
13        MS. LEM:  Okay.
14        THE COURT:  You guys need to (indiscernible).  And Mr.
15   Ballesteros, Mr. Sully, you'll get the documents as soon as we
16   get this worked out.  We will get it worked out, because on
17   Friday, one way or the other, I'm issuing an order.  We'll give
18   you guys access to the documents under some circumstances
19   moving forward.
20        MS. LEM:  Okay.  Thank you, Your Honor.  I just --
21        THE COURT:  So, you have a week to work on it.
22        MS. LEM:  Okay, understood.  I just have a few
23   housekeeping things that -- when you're ready.
24        THE COURT:  I'm ready.
25        MS. LEM:  Okay.  I just want to make sure, just so it's
```

1    clear, there are some dates that have been scheduled, and I

2    just want to make sure, so that the January 9, Monday, trial

3    date is vacated.  I asked the Court to vacate that.  There is

4    also, under Docket 145, there was a separate scheduling order

5    entered for Defendant Garcia Villareal, and that had a bunch of

6    additional dates, including a trial date of January 23.  So,

7    just for clarity, I would ask that the Court vacate those other

8    additional dates that have been scheduled.

9         THE COURT:  Any objections from anyone, that we should

10   vacate dates that are set on holidays?  I'll go ahead and take

11   care of that.

12        MS. LEM:  Thank you, Your Honor.

13        THE COURT:  I'll go ahead and take care of that.

14        MS. LEM:  And the other housekeeping item I have is,

15   Defendant Sandra Guerra filed a variety of motions which were,

16   I think, joined by Mr. Tapia, but these were various pretrial

17   motions that were filed when it was unclear whether or not

18   there would be a continuance.  And so, these are -- the Docket

19   numbers are between 130 and 142.  And just for clarity, on

20   those motions, Your Honor, I'd ask you to divide them or rule

21   that they're moot or just -- you know, that nobody's responded

22   and that they're not pending.

23        MR. CYGANIWICZ:  And we would object to them being denied,

24   of course, Your Honor.  They should just be passed until a

25   further date.

 1           THE COURT:  Yeah, I don't think they should be denied.  I

 2    mean, basically, what we're going to do is take them off of the

 3    active docket until the time, and (indiscernible).  And then

 4    they can be (indiscernible).  So, I'll make note of that.

 5           MS. LEM:  Thank you, Your Honor.

 6           MR. CYGANIWICZ:  Thank you, Your Honor.

 7           MR. SULLY:  If I may, this is Chris Sully for Mr. Tapia.

 8    We did join those motions.  We also filed an additional motion,

 9    which was to strike (indiscernible) from the indictment.  So,

10    we just -- if the other motions have passed, I just want to

11    make sure ours doesn't fall through the cracks, that we filed

12    separately.

13           THE COURT:  What I'll do is I'll take a look at all

14    motions that are basically trial related and/or that would be

15    affected by the continuance.  I'll take care of those, and if

16    there's any motion -- and it sounds like, Mr. Sully, your

17    motion, you still want that to be considered.  Do you want it

18    to be considered now or are you asking that that also be

19    postponed until the time that we set a trial date?

20           MR. SULLY:  I would defer on the timing to the Court, Your

21    Honor.  But it is a motion that we are going to be urging.

22           THE COURT:  Anything else?

23           MR. SULLY:  Yes, Your Honor.  I just wanted to make sure I

24    understood as far as what the Court wants from us on the

25    protective order.  So, does the Court, basically, want us to

1    file something by the 13th, which is next Friday, regarding our

2    agreement, if we're able to reach one, or where we leave off,

3    and then the Court would rule from there, and then we would

4    have the hearing on the 20th on the other issues?

5         THE COURT:  Here's what's going to happen.  You guys with

6    me on the 13th, any proposed agreement; if you don't have

7    agreement, on Monday morning, I will give you a protective

8    order one way or the other, crafted to the best of my ability.

9    And then, at that point in time, Ms. Lem, you should be well

10   prepared to start sending documents to the Defendants, pursuant

11   to the protective order.

12        MS. LEM:  Yes.

13        THE COURT:  On the 20th, we'll sit down, based on the

14   initial tranche of documents that comes out, to get an idea of

15   how long we needed for a continuance.  And in all the

16   preliminaries, you'll pretty much be able to get a good idea of

17   how many documents, what documents pertaining to everyone, and

18   then (indiscernible).  Ms. Lem (indiscernible) the Defendants,

19   to give, turn over as many documents as you can regarding their

20   clients so that they can make an informed decision.  Anything

21   else?

22        MR. SULLY:  Your Honor, I was going to make, perhaps a

23   suggestion so that we don't -- so that (indiscernible) get the

24   discovery a little bit earlier.  Since the only issue with the

25   protective order seems to be whether or not the Defendants can

1    retain copies, I was going to suggest that perhaps the Court

2    would enter a protective order for now with, you know, the

3    proposed language; which is that the Defendants can't retain

4    copies, so that they Government can start giving us discovery

5    between now and the 13th, or whenever other part of the

6    language gets resolved.

7         And then, based on the Court's ruling, on or after the

8    13th, regarding whatever agreement we may be able to reach, as

9    far as Defendants retaining copy, then perhaps the Court could

10   enter a modified or an amended protective order, so that we can

11   hopefully then give our clients copies.  But if the only issue

12   is whether our clients can or cannot retain properties, I would

13   rather at least be able to receive discovery now and review it

14   myself, if I can't get (indiscernible) to my client, and that

15   way take advantage of those two weeks between now and then.

16   And then once we, hopefully, get this issue resolved, and get

17   an amended protective order that allows our clients to have

18   copies, then we can provide copies for our clients at that

19   point, if the Court were to rule that way.

20        But I just don't want to waste another two weeks, and I

21   want to make sure we're as well prepared as we can be for the

22   hearing on the 20th, Your Honor.

23        THE COURT:  I understand your argument, but respectfully

24   denied.  Candidly, if I give you what you want now, you've got

25   really no incentives to work quickly and try to get a

```
 1   resolution on this matter by next Friday.  So, I mean, you've

 2   got until next Friday.  Everybody's got an incentive to come to

 3   the table and get this worked out as quickly as possible,

 4   because we all get the documents and we all can move forward.

 5        I understand your argument, but respectfully denied.

 6        MR. SULLY:  Yes, Your Honor.  Thank you.

 7        THE COURT:  Thank you all for your patience this morning.

 8   I know this took a little bit longer than you anticipated, but

 9   I think we're moving forward.  The goal here is to make sure

10   that everybody gets the information they need to adequately

11   represent their client, whether it's the Government or the

12   Defendant, and that's the goal of the Court.  So, if you can

13   work toward that goal, understanding the concerns I have with

14   the protective order as I was drafted, I think you guys can

15   come up with some resolution of this problem.  And just let me

16   know by next Friday.  And it's good to see you all.

17        ALL:  Thank you, Your Honor.

18        THE COURT:  Good bye.

19        (Hearing adjourned at 10:40 AM)

20                              *  *  *  *  *

21

22

23

24

25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                              RULINGS

4                                                   Page        Line

5    Motion For Continuance, DENIED                 35          23

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T I O N

 2

 3       I, Sonya Ledanski Hyde, certified that the foregoing

 4   transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8   Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  April 13, 2023
```