**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 4:22-CR-560-1** |
| **PLAINTIFF,** | |
| **V.** | **HOUSTON, TEXAS** |
| | **THURSDAY, OCTOBER 16, 2025** |
| **CARLOS FAVIAN MARTINEZ, ET AL,** | **11:08 A.M. TO 11:59 A.M.** |
| **DEFENDANT.** | |

**MOTION HEARING**

**SOME PARTIES APPEARING TELEPHONICALLY**

**BEFORE THE HONORABLE GEORGE C. HANKS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

| | |
|---|---|
| APPEARANCES: | SEE NEXT PAGE |
| ELECTRONIC RECORDING OFFICER: | DANIEL MACCIO |
| CASE MANAGER: | KIMBERLY PICOTA |
| OFFICIAL INTERPETER: | NONE PRESENT |

TRANSCRIPTION SERVICE BY:

**TRINITY TRANSCRIPTION SERVICES**
**1081 Main Street**
**Surgoinsville, TN 37873**
**281-782-0802**
**trinitytranscripts@aol.com**

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 4:22-CR-560-1** |
| **PLAINTIFF,** | |
| **V.** | **HOUSTON, TEXAS** |
| | **THURSDAY, OCTOBER 16, 2025** |
| **CARLOS FAVIAN MARTINEZ, ET AL,** | **11:08 A.M. TO 11:59 A.M.** |
| **DEFENDANT.** | |

**MOTION HEARING**

**SOME PARTIES APPEARING TELEPHONICALLY**

**BEFORE THE HONORABLE GEORGE C. HANKS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

Appearances:

**For the GOVERNMENT:** **ALEXANDER L. ALUM, ESQ.**
Assistant United States Attorney
Office of the United States Attorney
1000 Louisiana, Suite 2300
Houston, TX 77002

**For the GOVERNMENT:** **JOHN S. DAVIS, ESQ.**
**BRITTANY E. MCCLURE, ESQ.**
DOJ-ATR
United States Department of Justice - Antitrust Division
450 Fifth Street, N.W.
Washington, DC 20530

**For the GOVERNMENT:** **DANIEL NAVA**
Investigative Analyst
Homeland Security Investigations
No Address Provided

Appearances (cont.):

**For the DEFENDANT:** **DAN COGDELL, I, ESQ.**
**NANCY YOST, ESQ**
Cogdell Law Firm
712 Main Street, Suite 2400
Houston, TX 77002

**For the DEFENDANT:** **KENT A. SCHAEFFER, ESQ.**
Schaffer Kennedy Johnson
1001 McKinney Street, Suite 1600
Houston, TX 77002

**PRETRIAL SERVICES:** Rosa Moreno

Transcription Service: Cheryl L. Battaglia
Trinity Transcription Services
1081 Main Street
Surgoinsville, TN 37873

**Houston, Texas; Thursday, October 16, 2025; 11:08 a.m.**

**(Some parties appearing telephonically)**

**THE COURT:** Well, welcome back everyone. The next case on the Court's docket is, *Cause Number 4:22-CR-560-1, the U.S. –– U.S. versus Carlos Martinez.*

We have counsel both on the line and also present. So, first, we'll have counsel that are present, if you can all just introduce yourselves to the Court and state the parties you represent. Starting with the Government.

**MR. ALUM:** Good morning, your Honor. Alex Alum on behalf of the United States.

**THE COURT:** Okay. Welcome.

**MR. DAVIS:** Good morning, your Honor. John Davis for the United States. And with us at counsel table is Daniel Nava ––

**THE COURT:** Okay.

**MR. DAVIS:** Investigative analyst.

**THE COURT:** Sure if you just move the microphone a little bit closer.

**MR. NAVA:** Sorry. Daniel Nava, Investigative Analyst, Homeland Security Investigations.

**THE COURT:** Okay. Thank you.

**(Pause in the proceeding.)**

**THE COURT:** And then let's start with the Defendants in the courtroom.

**MR. COGDELL:** Good morning, your Honor. Dan Cogdell and Nancy Yost (phonetic) with Mr. Martinez.

**MR. MARTINEZ:** Good morning, your Honor.

**MR. COGDELL:** I'd like to have Kent introduce himself.

**MR. SCHAEFFER:** Good morning, your Honor. Kent Schaffer --

**THE COURT:** Good morning.

**MR. SCHAEFFER:** -- on behalf of Mr. Martinez.

**THE COURT:** Okay.

**MR. QUINTANILLA:** Good morning your Honor. C.J. Quintanilla also on behalf of Carlos Martinez.

**THE COURT:** Okay. Mr. Quintanilla, good morning.

**MR. MARTINEZ:** Good morning, Judge. Javier Martinez for Mr. Martinez.

**THE COURT:** Okay. Welcome.

And then counsel on the line?

**MR. MCCLURE:** Good morning, your Honor. Brittany McClure for the United States.

**THE COURT:** Okay. Great. Is there anyone else online that will be speaking at the hearing?

**(No response.)**

**THE COURT:** Okay. Well welcome, everyone. As I said this hearing was set for restitution, to calculate the amounts of restitution in this matter.

But I received yesterday late the opposed motion to continue the restitution hearing based on the fact that the report from Probation wasn't received by Defendants until yesterday. And I like to hear a little bit — little bit about that and understand the Government's position.

Mr. Cogdell?

**MR. COGDELL:** Good morning, your Honor.

**THE COURT:** Good morning.

**THE COURT:** Yes. First off, as the Court is aware, a lot of times in restitution matters it's — it's just kind of, you know, monopoly money. It doesn't really apply.

**THE COURT:** Uh-huh.

**MR. COGDELL:** In this case, it's not monopoly money. They are seeking substantial tens of millions of dollars in restitution. And Mr. Martinez, while he doesn't have 50 million lying around, he is not a man without — without some resources.

So we are playing for real live dollars.

**(Pause in the proceeding.)**

**MR. COGDELL:** As the Court is aware by reading the motion, yesterday we received 170 pages of documents, which the Government is relying upon in their restitution.

We received them yesterday around 2:00 p.m. They are in Spanish. There is no possible way we could go through 170 pages worth of documents in Spanish in order to — in order to

be able to cross examine him.

Just this morning, we received another dozen or so pages, which presumably, the Government has had for months. I'm not alleging bad faith on the part of the Government. We have been trying to cooperate and -- and -- and -- and work, you know, together with them for some time.

But A, either the Government or Probation has had this information for a long time before it was produced to us. And -- and B, we need to -- we need time to review it in order to be able render effective assistance of counsel.

Finally, on Monday we learned from the Government that some of the documents that they were going to be looking at to support their arguments was the trade data. The trade data was produced in -- in Phase 20 of the discovery.

The trade data, which is, I think, 20,000 pages worth of documents identifies the persons by name, right? But the problem with that is in the victim impact statements and through Probation, the -- the victims are anonymous.

So we don't know who those 20,000 pages relate to. So in addition to the relief for additional time, we're going to request that the Government either identify the victims that are associated with the trade data or not use the trade data at all.

**THE COURT:** Okay. Let me hear from the Government.

Thank you, Mr. Cogdell.

**MR. COGDELL:** Yes, sir.

**THE COURT:** Can I hear from the Government as to the basis for the opposition? I know this was just filed, so you didn't have a chance to file anything --

**MR. DAVIS:** Yes.

**THE COURT:** -- but I'd just like to hear oral argument.

**(Pause in the proceeding.)**

**MR. DAVIS:** Government objects to the Motion to Continue, your Honor, for several reasons.

This hearing has already been continued at the Defendant's request.

**(Pause in the proceeding.)**

**MR. DAVIS:** Probation did file additional documents yesterday. They pertain to four victims only.

It is -- it is true that Probation did not include some documents related to Victim Number Two, a fifth victim. And we realized that overnight and sent them this morning.

So there are some late-arriving documents. However, the vast majority of these documents are back-up records that are not necessary to the victims' loss claims and to understanding them.

And most importantly, the -- the victims' loss claims and loss information is already summarized, specifically in the Government's pleading that was filed ten days ago or so.

There's nothing that Probation filed, none of these new documents, changes the Government's positions stated in the brief.

**(Pause in the proceeding.)**

**MR. DAVIS:** In additional, although this hearing has been pending for months, the Defendant has not objected to the PSR, or to any of the addenda regarding restitution. It never made — the Defendant never made a document request until two days ago right before this hearing.

And the — the defense has not filed any response to the Government's restitution memo. And one of the things the Fifth Circuit is clear on is a restitution, the defense doesn't just to go in — just get to go in and make some general denials. The question here is what are, if there are specific issues about restitution amounts, what are they?

And the — the defense has not done anything about that. Although everything we — we are arguing is laid out in our brief.

And all this is in a case where the Defendant has already agreed in the plea agreement to pay restitution that the extortion loss is more than $9.5 million. And that he'll do nothing to delay payment of restitution to the victims.

Despite all of that, the defense again moves to continue this hearing.

**THE COURT:** Can I just ask a question?

**MR. DAVIS:** Yeah.

**THE COURT:** Are you — is there like a concern that the money is not going to be there? Or, I mean, what's — I understand that — that the Government wants to get this done right away.

But I'm just wondering is there some worry or concern that there won't be any funds for — for restitution? What's the — what's the concern about the delay?

**MR. DAVIS:** I don't have a specific concern, your Honor.

**THE COURT:** Okay.

**MR. DAVIS:** The Defendant is incarcerated. I don't know what he's doing with his money in Mexico. I don't know what his associates are doing with his money or his, you know —

**THE COURT:** Okay.

**MR. DAVIS:** — other people are.

But I don't, I know —

**THE COURT:** Okay.

**MR. DAVIS:** I don't have a specific concern.

**THE COURT:** Okay. I was just trying to figure out —

**MR. DAVIS:** Yeah.

**THE COURT:** — you know, if there was a concern or, you know —

**MR. DAVIS:** Yeah.

**THE COURT:** Okay. I'm sorry I didn't mean to interrupt.

**MR. DAVIS:** And unless the Court has questions.

**THE COURT:** No questions.

**MR. SCHAEFFER:** May I respond very briefly?

**THE COURT:** Yes.

**MR. SCHAEFFER:** So --

**(Pause in the proceeding.)**

**MR. SCHAEFFER:** I want to try and make it a little clear exactly what our problem is.

So, there are presented to the Court document -- there's documentation regarding 15 specific victims who are claiming they're entitled to restitution. Now we don't know who they are because their names are redacted.

And basically, it just summarizes. It says, this victim's entitled to 3 million. This victim's entitled to 20 million. Some victim says he's entitled to 68 million.

**THE COURT:** Uh-huh.

**MR. SCHAEFFER:** And it's just presented in sort of a summary fashion.

The Government says, well all right, so what you have to do is you have to go to the export trade data. And that will back-up the numbers in the summary.

So then you go to the export trade data, which is, as Dan told you, 20,000 pages with literally hundreds of thousands

of entries.

The export trade data identifies numerous companies that were shipping cars across the border. So you could get the export trade data and say okay. Sava (phonetic), which was Mr. Martinez' company, had 8,000 cars go across the border. So he would have paid in "X" amount.

But when you look at the corresponding victim impact statements, it doesn't identify who they are. So you can't link the victim impact statements to the underlying trade data, cause you don't know who the victims reportedly are.

So what the Government has this morning and the burden is on them to convince you beyond a preponderance of the evidence. But the burden then shifts to us to present to the Court issues involving credibility of the numbers. We're unable to do that, cause you can't match one to the other.

But secondly, the prosecutor just told you, yesterday they produced documents on four -- three or four separate victims, which is 170 pages of financial records in Spanish. We all thought it was one victim.

So that just goes to show that because of that -- that late last minute production, and trust me, there's five or six of us working on this. And we all assumed this is just one victim. And we're trying to go through the records and translate and figure out what it means and who it corresponds to. Now we find out it's really four.

So, again, I don't want to blame the Government. I think we've had pretty good relations with all the prosecutors. But -- and I'm not saying anything that's done intentionally. But this is a -- a huge amount of information that really should have been given to us quite a while ago and through -- and maybe it's because they're produced millions and millions of documents that this stuff got overlooked to the last minute.

But I would ask that the Court give us 60 days or so, but with a few things built in. The Government should give us at least 30 days in advance every document that backs up the numbers that they intend to present to the Court if those documents exist. And I understand that some may not.

But if they do, we have a financial analyst -- analyst, former FBI agent who worked on this case since day one. She can look at it and she could tell us, no, the Government's right, or the Government's off and here's why, which is what we need.

Right now we don't have enough information to do that. But secondly, we need the identities of the victims. And here's the thing about it. There are 15 purported victims. And these victims are people that own transmigrant companies claiming that for many, many years they were paying money into a pool. And then that money would get cut up among all the Defendants in this case plus more.

And had we gone to trial on this case, they all would

have testified. And so we would know their identity. Now, I know the Government's going to say, well everybody's concerned for their safety.

But you can order -- you can issue a protective order that counsel only is allowed to know the identity of the victims so that we can match it to the underlying trade data. Because without that, we just have a sheet of paper saying some anonymous person is saying he's out $3 million and he wants $3 million. And we can't match it to the underlying data.

You can instruct us not to share that information with the client, with anybody who's, you know, not either in my office or Mr. Cogdell's office. You do that all the time in cases. And we've never violated any of these protective orders.

In fact, I -- there's been protective orders over all the discovery in this case. And we haven't shared it with anybody. And the Government won't say that we did.

**(Pause in the proceeding.)**

**MR. SCHAEFFER:** Also, the -- the whole purpose of getting the -- the continuance before. We could have dealt with this weeks ago, but I -- at the last minute I was told I was scheduled for eye surgery. They thought it was going to be put off for a month or two. And then the doctor had an opening. And -- and my eyesight had gotten so bad in one eye they had to operate immediately. And it worked perfectly.

But that's the reason we asked for the continuance last time is because they could get me in in September instead of late October and November. So it wasn't, you know, not — I'll take the hit for that one.

But this is one that affects Mr. Martinez because you're going to be asked by us to award possibly three, or four, or five million and by the Government for 50 or 60 million, we think. We're not exactly sure what they're asking for.

But — but it's just very important, your Honor.

**THE COURT:** Thank you, Mr. Schaeffer. I —

**MR. SCHAEFFER:** Thank you.

**THE COURT:** So looking at all this, I mean, clearly, with all due respect to the parties, you know, given the volume of information we need more time. I mean, and — and I don't see the down side of giving the Defendants additional time to go through these voluminous documents that have been produced.

**(Pause in the proceeding.)**

**THE COURT:** And I think it's a good idea to put it off 60 days. And I think it's also a good idea to have at least 30 days' notice to the Defendants if documents more than a certain amount of documents are produced.

Because you need to have enough time to review them. My issue, I guess what I'm trying to figure out is, both sides' position on how do you go about — how do you go about being

able to properly analyze this without the identities.

I -- I don't, I mean, what's the -- so start again. I agree that more time's needed. I agree 60 days is appropriate. I agree that 30 days prior to the hearing the Government should provide its information if it's in excess of a certain volume. That is -- and I don't know what the volume should be.

But somebody should come up with a number. That is, if it's more than 100 pages, then you need to get 30 days' notice of that before the hearing. I think that's all a good idea.

What I'm struggling with, and I don't know how to -- to work through this, is to get you the information you need to be able to, you know, properly analyze this information to be able to make arguments that help the Court make a good decision.

**MR. SCHAEFFER:** We're I -- I mean, my suggestion was --

**THE COURT:** Right.

**MR. SCHAEFFER:** -- the protective order, because, as the Government will tell you, we've had numerous protective orders in this case and there's never been an allegation we violated one.

**THE COURT:** Okay.

**MR. SCHAEFFER:** I've been a lawyer here 44 years in

this District. And I've never been accused of violating a Court's order on anything.

**THE COURT:** Right.

**MR. SCHAEFFER:** And I never would.

**THE COURT:** I agree. I -- but I -- I want to hear from the Government. I mean, what's your -- I mean, do you have a problem with a protective order?

**(Pause in the proceeding.)**

**MR. DAVIS:** We do, your Honor. We don't accuse Mr. Schaeffer of -- of anything or anyone on the defense team.

**(Pause in the proceeding.)**

**MR. DAVIS:** But it occurs to me, for the first time this morning, that with regard to the trade data, there may be a way to redact information from the trade data, but identify it to a specific victim number --

**THE COURT:** Randomization.

**MR. DAVIS:** -- in a way -- which we haven't done yet. And it just occurs to me we probably could. And then at least the defense would have what we say the data -- what the Government shows is the data for the agency affiliated with that victim.

I think we could do that.

But I also want to emphasize, your Honor, how terrified the victims are in this case. And we deal with it. And Jenna (phonetic) Costillo (phonetic) the victim witness

specialist on this case, deals with it every week. And Danny Nava deals with it. People who are hard working businessmen who got extorted for a decade --

**THE COURT:** Yeah.

**MR. DAVIS:** -- by Mr. Martinez and his henchmen.

**THE COURT:** Yes. I had all --

**MR. DAVIS:** Yeah. Right.

**THE COURT:** -- the letters.

**MR. DAVIS:** So --

**THE COURT:** And during the sentencing.

**MR. DAVIS:** And --

**THE COURT:** I understand.

**MR. DAVIS:** -- I've never had -- I haven't worked in South Texas before. I've never had a case with victims, truly deserving meritorious victims, who are owed a lot, be so -- so --

**(Pause in the proceeding.)**

**MR. DAVIS:** -- have so much trouble surfacing, speaking, being identified. And I totally understand it.

And -- but as -- as the Court knows, we as prosecutors are bound to respect the privacy and dignity of victims. And in restitution proceedings in particular under 3664, the 18 USA 3664, which is the whole roadmap for restitution, it is entirely appropriate to conduct proceedings that protect victim privacy and victim identity.

So, I -- I just want to be clear. We're not backing down from the need, the paramount need, to protect these victims. And we're not going to easily or readily identify them to the defense. So --

**THE COURT:** I -- I understand the parties' positions. I'm wondering if maybe there's a way either through -- give me one second. I want to think something through. And I think I might a solution for you all. Because all we're doing is matching up data -- data with names for you to be able to analyze it easily.

Let me give this some thought and I'll be right back.

**MR. DAVIS:** Thank you, your Honor.

**THE COURT:** Okay.

**UNITED STATES MARSHAL:** All rise.

**(Recess taken from 11:27 a.m. to 11:36 a.m.)**

**UNITED STATES MARSHAL:** All rise.

**THE COURT:** Please be seated everyone.

**(Pause in the proceeding.)**

**THE COURT:** Okay. We're back on the record in this matter.

The first question I have is without the names, Mr. Schaffer and Mr. Cogdell, how would you go about doing this?

I mean, is it just that you can't do it? Or it would just take longer?

**(Pause in the proceeding.)**

**MR. SCHAEFFER:** Well I'm sitting here trying to think how to answer that. Cause I -- and the answer is I don't know. But listening to the prosecutor's idea --

**(Pause in the proceeding.)**

**MR. SCHAEFFER:** -- it could be --

**THE COURT:** Oh, can you just move the microphone just a -- a little bit more.

**MR. SCHAEFFER:** Oh, I'm sorry.

**THE COURT:** I'm sorry. It's okay.

**MR. SCHAEFFER:** It could be that if they would break down the export trade data by victim one, by victim two, by victim three. Then they could do that work for us and say okay. Here's the documentation that backs up victim one.

**THE COURT:** Right.

**MR. SCHAEFFER:** Because without either the name -- with the names or the organizing it like that, it's pretty much useless stuff. They're -- they're saying you owe this guy $10 and it's in this 200,000 entry document. Go find it.

**THE COURT:** Right.

**MR. SCHAEFFER:** Then it's impossible to tell.

**THE COURT:** Oh, yeah. And --

**MR. SCHAEFFER:** So that was sort of what I think his idea was, is they could break it down by victim. And we could still refer to them as victims one, two, three, four, five,

six, on and on.

Now –– but here's the –– the only thing about that.

**THE COURT:** Okay.

**MR. SCHAEFFER:** So the way this supposedly worked is that all these transmigrant companies would send cars over into Mexico. Whatever money they collected, roughly, let's say $400 per car ––

**THE COURT:** Uh-huh.

**MR. SCHAEFFER:** –– would be paid into a pool. Out of that money, some has to go to the Mexican Government for licenses, permits, fees, things like that.

Then the person who brought the business in gets a small percentage. And the rest of the money goes to the pool where it's split up among, I think, roughly six people, let's say for sake of argument.

**THE COURT:** Okay.

**MR. SCHAEFFER:** On one of the victims, they gave us documentation where we were able to tell how much the victim got paid back by the pool. So –– cause you –– you have to back out ––

**THE COURT:** Okay.

**MR. SCHAEFFER:** –– what they already got. They shouldn't get restitution when they already got the money to begin with.

**THE COURT:** Right.

**MR. SCHAEFFER:** But on the other 14 victims, there's no similar breakdown.

Now I don't know if the Government has that breakdown or not. And Mr. Martinez could tell me whether we could do — if — if we do it the way that the Government is suggesting, can we tell who's been paid back already or not?

**MR. MARTINEZ:** No, they would — so because each victim was paid back a certain percentage, the Government would have to identify what percentage — with what percentage that person got paid back. Because I don't know how we would figure that out otherwise.

**MR. DAVIS:** Well, yeah. Because then somebody might say, okay. Well, I paid three million into the pool. Well, yeah, but you got back 1.2 million. So you're only entitled to 1.8, not three. You — you see?

**THE COURT:** Right.

**MR. SCHAEFFER:** So, but you multiply it times 15 victims it's a big number.

**THE COURT:** Okay. Can I hear the Government's thoughts on this? Because, you know, what I was thinking about, honestly when I was going back, was your proposal of splitting it up, that — so that they can use the data.

That way, without having to disclose the names and numbers. Is there a way for you to work out this particular issue as well? I — I don't know. I'm just asking.

**(Pause in the proceeding.)**

**THE COURT:** I hadn't thought about this issue. Because it seemed like your proposal worked in getting them the information they needed to be able to evaluate whether or not these victims were really entitled to this restitution without disclosing their names and addresses or any personally identifiable information.

**MR. DAVIS:** Could I ask, please, for the number of the victim who the defense says the records show received their money?

**MR. SCHAEFFER:** Yes, Victim Number 5.

**MR. DAVIS:** Okay.

**MR. SCHAEFFER:** Here. Let me –– let me share a chart with you that we prepared on this.

**(Pause in the proceeding.)**

**(Voices whispering.)**

**MR. SCHAEFFER:** Now one thing you might be able to do, is we could meet with the Government and notify the Court 30 days in advance of any outstanding problems, that –– that the Court can rule on before we come back to Court.

So if we feel we don't have enough information, we can notify the Court. And the Court could deal with it well in advance.

**THE COURT:** Okay.

**MR. SCHAEFFER:** Cause we didn't –– we weren't able to

make this determination until this morning when Mr. Martinez was preparing this chart where he found that's the only purported victim who they actually back out what the person had already been paid back.

**THE COURT:** Okay.

**MR. SCHAEFFER:** So it decreases the number.

**THE COURT:** Okay.

**(Pause in the proceeding.)**

**MR. DAVIS:** I would say, your Honor, that –– well, we're always open to speaking to the defense. And ideally, we could agree on restitution as the defense has agreed that they will pay restitution.

What I would say about ––

**(Pause in the proceeding.)**

**MR. DAVIS:** –– and I –– I don't know exactly the number. But my guess is that nearly every victim on the list did not receive payment back.

What –– what the victim on the list had to do, they're a small transfer to ground agency that doesn't get a cut of the pool. But they have to pay into it. And they have to charge the prices that the extorters require.

When –– when they pay into it, they can keep whatever profit is left. But they pay a single payment per vehicle, based on the type of vehicle every day, or every week in cash.

And that money doesn't come back to them, right. So,

if –– if –– if the defense is saying that small transfer ground agencies were being extorted here were getting money of any significant amount back, so that the –– cause the extorters don't care about accounting, or fairness, or due process for –– for the people they're extorting.

They're taking the money. And that money is going to the –– to the criminals.

**THE COURT:** I'm just trying to figure out how they get the money ––

**MR. DAVIS:** They don't get the money ––

**THE COURT:** –– back

**MR. DAVIS:** –– back.

**THE COURT:** Okay.

**MR. DAVIS:** The money is paid. And the money is Piso (phonetic). And some of that money is a legitimate fee. But the –– the extorters take the rest of it and divide it up.

**MR. MARTINEZ:** The smaller agencies are attributed a certain percentage.

So, it was –– the smaller agency can't work without the pool, because they don't have access to the Mexican custom brokers.

**THE COURT:** Okay.

**MR. MARTINEZ:** So the smaller agencies pay –– join the pool. And, I guess, as a reward for joining the pool, that's –– I'm just so –– for illustrative purposes, then they

get a certain percentage back.

So the smaller agencies, let's say, would get two percent of the pool profits. That's why it's called a pool, because everybody pools their money together.

In fact, I understand what Mr. Davis is saying. But what I am telling you is exactly was in the factual basis of the plea agreement, that the smaller agencies receive a smaller percentage of the pool profits. And the larger agencies create, you know, they — they made more money, cause they have a higher percentage.

So it — that's in the factual basis. And that's how this scheme went down. So the smaller agencies that are victims did receive a smaller percentage back that we don't believe they're deducting from the losses in the restitution forums.

At the end of the day, it's the Government's burden to prove actual loss. We're just trying to figure out a way that, you know, they could tell us which agency got what percentage so that we're able to make, you know, good presentation to the Court.

**THE COURT:** Okay. But — so why — I guess I'm — I'm missing a step.

Why is the name and identifiable information of the victims important?

**MR. SCHAEFFER:** Because if you have the name of the

individual, then you can go to the export trade data and pull all the trades in order to see if the –– what the number of vehicles was multiplied times the amount of money charged for the vehicles.

And that will or will not match up to these victim impact statements. So right now we have a victim impact statement where Victim 1 says I'm entitled to $3 million, but there's no back-up. And the Government said well the back-up is the export trade data.

But then you go to the export trade data, and you can't tell who Victim 1 is. So we have 20,000 pages that you can't link it to any one of these 15 victims.

So we just need to be –– to match the export trade data with the victim numbers.

Now if that can be done by the Government like I suggested saying, all right, these 2,000 pages pertain to Victim 1. These 500 pages pertain to Victim 2, on and on and like that, then the names become somewhat irrelevant.

**(Pause in the proceeding.)**

**THE COURT:** Mr. Davis? I –– I don't ––

**MR. DAVIS:** I don't disagree. That is –– I don't think the defense needs the name of an individual ––

**THE COURT:** Right.

**MR. DAVIS:** –– or the name of an individual's company to make the defense here.

Again, we've agreed on a lot.

**THE COURT:** Right.

**MR. DAVIS:** And we've agreed to restitution.

**THE COURT:** Right.

**MR. DAVIS:** And we've agreed to cooperate in paying restitution. And it just seems like the defense is proposing a flyspecking trial where the Defendant has to put on -- where the Government has to put on a forensic accountant.

And that's not -- that's not the law, your Honor.

**THE COURT:** Yeah. I didn't think --

**MR. DAVIS:** The law allows a reasonable estimate.

**THE COURT:** Right.

**MR. DAVIS:** And the law allows victims to make their claims without getting dragged in here and cross examined.

**MR. SCHAEFFER:** We're --

**THE COURT:** We'll, I don't --

**MR. SCHAEFFER:** -- not asking to cross examine.

**THE COURT:** Yeah. I didn't think they were asking for that.

**MR. DAVIS:** All right.

**MR. SCHAEFFER:** With some victims -- well a lot of the victims said they're entitled to 69 or $68 million.

**MR. DAVIS:** No, they don't. They --

**MR. SCHAEFFER:** (Indiscernible.)

**MR. DAVIS:** That victim has very carefully put

together a spreadsheet that you have that shows 3.3 million. And that's an –– that's Victim –– Victim 15's supplement ––

**MR. SCHAEFFER:** Well, one them says ––

**MR. DAVIS:** –– you –– you can ––

**MR. SCHAEFFER:** –– 68 million, you knew exactly ––

**MR. DAVIS:** Sure.

**MR. SCHAEFFER:** –– what I was talking about.

**MR. DAVIS:** Sure.

**MR. SCHAEFFER:** Because that's the first thing they said when they come to the Government is we're entitled to the 68 million.

Then by the time the Government gets through dealing with them, they're down to three million. But we don't see the records that substantiate even the three million.

We also have reason to believe, and this is totally in good faith that I'm telling you this, that one of the purported victims, if not more, was actually a member of the pool receiving a large amount of money. I can identify that victim right now by name. But I won't, cause we're in court. And I've got to be sensitive about it.

But we have reason to believe, based on what other victims said, that one of the victims was extorting a very, very large amount of money up into the millions of dollars.

So if so, Mr. Martinez shouldn't be responsible for making restitution on money that was being extorted unbeknownst

to him that this other victim was making off with.

**THE COURT:** Well —

**MR. SCHAEFFER:** And the prosecutor knows who I'm talking about.

**MR. DAVIS:** Well —

**THE COURT:** So, it seems like the first issue is, one, this is going to be continued. There's no question about it. Two, we need to figure out a way to get — get you the information you need to be able to analyze this without compromising the identity of the victims.

Because I did — I agree with you. I read — Mr. Davis, I read those victim statements. I was in court for the sentencings, cause I did them. You know, these victims were terrified.

And — and I don't want to put them through — or — or compromise them, or let them think that the Government is letting them down, by turning over their identities and — or any sort of identifiable information.

So I've got to try to figure out how to do that and also give Mr. Schaeffer and his client the information they need. And I was just trying to figure out.

My first thought was, well, if you proceeded the way that you suggested, which is you identify the trade data with the victims, that would do it. That seemed to do it.

But Mr. Martinez say that that's not — that won't

work. But I'm still not — I still don't understand it well enough to understand why that won't work. So what I want you guys to do is sit down and talk about that.

Because, I — I don't — I don't get it, respectfully. I'm trying. But I don't understand. Maybe it's because I don't understand how this — this —

**MR. MARTINEZ:** It is a complicated way that they — that this business operated. But we'd be happy to sit down with the Government —

**MR. DAVIS:** Yeah.

**MR. MARTINEZ:** — and see if we can agree to something.

**MR. SCHAEFFER:** And — and maybe the thing to do is for — well let's start with what the prosecutor suggested. And if that doesn't work out, then two, three weeks from now we can file with the Court a pleading setting out what we need and why.

**THE COURT:** Yeah.

**MR. SCHAEFFER:** And — and why this hasn't been sufficient, if it hasn't been sufficient. It could be it solves all the problems.

And if we come up with the real number, it may be something we can sit down with the Government and talk about. But right now, our number and their number's pretty far apart. But we haven't seen any of the underlying documentation.

So if we start out with compartmentalizing the documents that go as to each victim, that may get us to where we need to be. And if not, we can notify you a month or so before the hearing.

**THE COURT:** Mr. Davis, does that work for you? That was my initial thought. But I — cause that would both protect the identity of victims. It's a little bit more work for you. But, you know, it's, you know, your burden to show restitution.

So it's not — I don't think it's that much more work.

**(Pause in the proceeding.)**

**MR. DAVIS:** Certainly we welcome engagement —

**THE COURT:** Or do you want to think about it.

**MR. DAVIS:** — with the — the Defendants, your Honor. And — and we'll — we'll talk. Well, I — I will — I'm not sure about the trade data —

**THE COURT:** Right.

**MR. DAVIS:** — and the form it's in. It's in big Excel spreadsheets and whether it's readily redactable. I don't want to swear I know what they did.

**THE COURT:** Right. You don't — yeah.

**MR. DAVIS:** But, I don't know. I — I kind of think we can.

**THE COURT:** Well I'm not holding you to it.

**MR. DAVIS:** Yeah.

**THE COURT:** I'm not holding anybody to anything. We're sort of doing this on the fly.

**MR. DAVIS:** Right.

**THE COURT:** Yeah. The issue was the continuance. That's resolved. Now the issue is what do we do during those 60 days just so that we're not here again with the same issues in 60 days.

And I think that that's the part that you guys need to sit down and talk about.

**(Pause in the proceeding.)**

**MR. SCHAEFFER:** Well why don't we start trying what the prosecutor's suggesting. I mean, do you think you can do that?

**THE COURT:** Well, I'm not --

**MR. DAVIS:** We'll certainly try. And I certainly can -- can let you know within -- within a week of today. And I think we should schedule a meet and confer conference soon after that.

The question about payment back.

**(Pause in the proceeding.)**

**MR. DAVIS:** I want to think about and look into more. One thing I don't want to have to do is go back to the victims again.

**THE COURT:** Right.

**(Pause in the proceeding.)**

**MR. DAVIS:** But, again --

**(Pause in the proceeding.)**

**MR. DAVIS:** -- the small victims, I don't think ever got money back. The -- the -- that would have been a waste of time for the extorters. They're not --

**THE COURT:** Right.

**MR. DAVIS:** They're not making deliveries to deliver you $100 which is your chump change two percent. That would have been backed out of what they're paying, you know, anyway. So --

**THE COURT:** Well, you guys -- I -- I don't --

**MR. DAVIS:** Yeah.

**THE COURT:** Why don't you guys talk that through.

**MR. DAVIS:** Right.

**THE COURT:** Because I don't --

**MR. DAVIS:** And -- and part of it maybe just explaining. Because for most of these agencies, we do have exactly the calculations they're making. And -- and they don't -- they don't -- the trade data are there simply as a -- as a check as kind of a gut check.

Okay. This -- this agency is claiming $6 in extortion payments. What was the actual volume of trade. That's a very valuable check. Because you can see, yeah, this company for ten years was doing, you know, hundreds --

**THE COURT:** Yeah. Yeah.

**MR. DAVIS:** -- of vehicles a year. So --

But -- but the trade data is now where the actual number comes from. The number comes from the victim-business owner himself or herself who says, here are my records. Here's what I had to pay for each car or each truck to the -- to the extorters during that year.

And the amounts went up. The Piso amount went up. The pool -- the pool amount went up. And here is how I back out the legitimate fees. And you can see exactly what I'm saying is my extortion was.

I -- we can explain that to the defense.

**MR. MARTINEZ:** So one -- one of the things that we discussed with the Government this week is that we learned that some of the victims met with law enforcement after the initial victim impact statement. And the individual victim with -- with a Government agent sort of broke it down of, you know, how the extortion happened, how much they paid, and maybe what percentage they were attributed in the pool is in those notes.

We asked the Government to produce those notes to help us --

**THE COURT:** I'm not -- I'm not going to order them. I mean, you guys got to talk that through. I mean, you guys talk it through. Because I don't know what's in those notes. I don't know the process. You guys talk it through.

**(Pause in the proceeding.)**

**THE COURT:** So, I don't know there's anything else that I need to do here, other than I'm granting your continuance. You guys sit down and try to figure out how we're not here in 60 days talking about the same issues and you know what it is that you're looking for. See if you can talk it through.

And get back to me within a week. And see whether or not you've made any progress. And if you haven't, we'll have another status conference. And I have a better idea of what you need.

**MR. DAVIS:** Yeah.

**THE COURT:** Cause I don't think you're, honestly, with due respect, I don't think you're quite sure exactly what you need. And you don't know what you -- what you have in terms of what you can give up. So --

**MR. DAVIS:** Okay.

**THE COURT:** So --

**MR. DAVIS:** And, your Honor, for the record, I had just turned over reacted copies of Danny Nava's reports from meetings with victims. Had he testified, I was going to turn those over as Jencks Act.

But given where we are, I'm turning them over now for --

**THE COURT:** Okay.

**MR. DAVIS:** -- whatever value they have to the

defense. That's all the reports of victim meetings.

**THE COURT:** Okay.

**(Pause in the proceeding.)**

**MR. SCHAEFFER:** Are you going to set a date at this time? Or will we be notified?

**THE COURT:** I'm going to notify you of another date. Probably it will be within a week of -- well, let's give you guys a week. And then we'll -- thinking --

**(Pause in the proceeding.)**

**THE COURT:** I'll -- I'll -- I'll get back to you. It's probably going to be the first week in November. Because --

**MR. SCHAEFFER:** For the hearing? Or you'll get back to us?

**THE COURT:** Oh, I'll get back -- well, I'll get back for you. But set the -- not the hearing in 60 days, but the hearing, the status conference.

**MR. SCHAEFFER:** Oh, okay.

**THE COURT:** We can do that one by telephone.

And, Mr. Martinez, you can be here, or -- I'm sorry we're just talking around you, but I apologize. You can either come in person or we can do it by video so everyone doesn't have to come on down.

**MR. MARTINEZ:** I don't have to be here.

**THE COURT:** Okay. Great. So that everyone, you

know, but let's have a –– a status conference, I'm guessing, cause it'll take you guys a week just to figure out whether –– what you can and can't do. So we're looking at the week after that.

So the last week in October. So it'll be –– it'll be the last week in October we'll have another status conference.

**(Court confers with the Case Manager.)**

**THE COURT:** And we'll get back to you on the dates, cause we've got trials set. But we'll figure it out.

Okay. So, your mission should you choose to accept it, is basically get together, figure out if it's possible to implement what you propose, Mr. Davis, with –– without disclosing the personal information. And if you can identify, Mr. Martinez, exactly why that would or would not work, based on your understanding of how the transactions went down. And you'll get some insight from Mr. Davis on his understanding to how the transactions went down.

And then at the hearing, you'll be able to identify –– talk to me about specifically what is it that you need and why. And you can tell me why you can't give it, you know, or what you can give and why you can't give what they want.

**(Pause in the proceeding.)**

**THE COURT:** Ah, October 30th, 2025 at 11:00 a.m. will be the Status Conference.

**(Pause in the proceeding.)**

**MR. COGDELL:** And that's a phone, your Honor?

**THE COURT:** By telephone so you don't have to come down if you don't want to.

Okay. It's good to see you all again. It's been a while. Good luck with resolving this. If you need my help, let me know before then. But I'll see you on October 30th and hopefully we'll have the issues a little bit more defined then.

**MR. COGDELL:** Okay. Thank you, your Honor.

**THE COURT:** It's good to see you.

**MR. SCHAEFFER:** May I approach, your Honor, on another matter?

**THE COURT:** Oh, yes. Yes. Thank you.

**(Pause in the proceeding.)**

**THE COURT:** Oh, I'm sorry. Did Probation have anything?

**UNITED STATES PROBATION OFFICER:** No, your Honor.

**THE COURT:** Okay. Great. Thank you.

**(This proceeding was adjourned at 01:04 p.m.)**

* * * * * * * * * *

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-

entitled matter.

/s/Cheryl L. Battaglia December 24, 2025

Transcriber Date

4:22-CR-560-1

10/16/25 - 12/24/25